# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-2729

IN RE:
    THOMAS CONSOLIDATED
    INDUSTRIES, INC.,

                                        *Debtor.*

THOMAS CONSOLIDATED
INDUSTRIES, INC.,

                                        *Plaintiff-Appellant,*

                    *v.*

JUERGEN HERBST, TRUDY HERBST,
ALLEN J. HERBST TRUST, ERICH F.
HERBST TRUST, STANDARD DIE
MOLD OF PALATINE, GERALD L.
McCULLOUGH, FRED POLLAK
and ED COGANA,

                                        *Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 6185—**George M. Marovich,** *Judge.*

SUBMITTED JUNE 5, 2006—DECIDED JULY 31, 2006

Before BAUER, ROVNER and WILLIAMS, *Circuit Judges.*

ROVNER, *Circuit Judge.* The bankruptcy court dismissed the case as a sanction for failing to comply with the

court's orders regarding discovery and for lying to the court about compliance with discovery orders. The district court affirmed the bankruptcy court's ruling and Thomas Consolidated Industries, Inc. ("Consolidated") appeals. Because the lower courts acted within their discretion in dismissing the case, we affirm.

## I.

Louis Levit, the trustee, filed this adversary proceeding against the defendants on November 9, 2001.[1] Everyone agrees that the parties did not commence discovery in earnest until August 2003 when the Cogana defendants[2] served interrogatories and document requests on Robert Thomas, counsel for the trustee.[3] The Herbst defendants followed with document requests and interrogatories in September 2003. On September 25, 2003, Thomas made available for inspection several file cabinets that contained

---

[1] Levit filed the instant appeal but Consolidated then moved to substitute itself as appellant. We granted that motion.

[2] The "Cogana defendants" refers to Fred Pollak and Ed Cogana. The "Herbst defendants" refers to Juergen Herbst, Trudy Herbst, Standard Die Mold of Palatine, Inc., Gerald McCullough, the Allen J. Herbst Trust, and the Eric F. Herbst Trust.

[3] Thomas, the lawyer for the trustee in the courts below, is a key figure in the litigation itself. The case arises out of the sale of Standard Die Mold of Palatine to Thomas and Consolidated, an entity formed by him. Thomas is the president and sole shareholder of Consolidated. The Herbst defendants moved to disqualify Thomas as counsel in the adversary action because as the owner and sole shareholder for Consolidated, he was expected to be the plaintiff's primary witness. Although the bankruptcy court granted the motion to disqualify, the district court reversed, allowing Thomas to represent the trustee through the discovery process.

documents he believed were responsive to the document requests. He did not, however, specify which documents were responsive to each request and did not file a written response to the document request. On October 29, 2003, Herbst served Thomas with its second set of interrogatories and a second document request. Once again Thomas did not serve written answers to the document requests, but on January 12, 2004 responded in writing to both sets of Herbst's interrogatories. Approximately eighteen of the twenty-four interrogatories in the first set referenced specific allegations in the complaint and requested "each and every fact upon which Plaintiff bases these allegations" and asked the trustee to "identify all documents which Plaintiff contends support these allegations." In response to every one of these eighteen different interrogatories, Thomas supplied the following answer:

> Plaintiff cannot state "every fact: [sic] at this stage of the proceedings and is not obligated to prepare the case of the defendants for trial. Plaintiff relies upon FRCP 33(d), the depositions of Robert C. Thomas, Juergen Herbst, Ed Cogana, Fred Pollak, the witnesses referred to in these depositions, the documents produced by these parties, the documents attached to these depositions and the documents which defendants had the opportunity to inspect and copy on September 25, 2003.

Thomas repeated this response word for word (including the unmatched quotation mark and the misplaced colon in the first line) eighteen times, giving no individual attention to the different allegations referenced in the interrogatories. Thomas' answers to the second set of interrogatories fared only a little better, with Thomas replying to ten of nineteen interrogatories by referring the defendants to the September 25, 2003 document production. Needless to say, the Herbst defendants were unsatisfied with these responses and filed motions to compel. They complained that the plaintiff failed to provide written responses to the document

requests and failed to make clear which documents were responsive to each request. They also alleged that the responses to the interrogatories were inadequate.

The Cogana defendants received responses to their interrogatories on January 19, 2004, approximately one week after the response to the Herbst defendants and approximately five months after the discovery was served. These interrogatories took a similar approach to those propounded by the Herbst defendants, asking the trustee to state the facts in support of certain allegations in the complaint and to identify documents in support of those allegations. In response, Thomas cut and pasted the reply he had given the Herbst defendants, using the very same paragraph we quoted above (right down to the misplaced punctuation) to respond to eighteen interrogatories from Cogana and seven interrogatories from Pollak. In addition, Thomas refused to answer six of Pollak's interrogatories because they were "duplicates" of certain of Cogana's interrogatories. The Cogana defendants met these responses with their own motions to compel.

In each instance, Thomas defended his responses as adequate. He argued that the Herbst document requests were an attempt to "oppress and cause expense to Plaintiff, to have Plaintiff prepare their case for them and to improperly gain insight into Plaintiff's lawyers' preparation for the case." In response to Cogana's motion, Thomas argued that interrogatories that sought the factual basis of the allegations in his complaint were "an attempt to oppress and cause expense to Plaintiff, to have Plaintiff prepare their case for them and to improperly gain insight into Plaintiff's lawyers' preparation of the case, thereby violating the attorney work product privilege." On March 8, 2004, the bankruptcy court heard all of the motions to compel together, and granted the defendants' motions. In explaining its ruling, the court told Thomas that the defendants were

"absolutely right" in their motion and that Thomas was "absolutely wrong":

> If someone were suing Ford Motor Company on the design of an automobile, Ford Motor Company couldn't respond to a request for documents by saying, here, look at all our documents. I think you can see the relevance and the impossibility of that. Similarly, you can't just say here are all the documents I've got, take a look through them. That's all you've got to do. That's not sufficient. You have to identify what documents you think support the allegations of fact that you have made. That's not preparing the defendants' case for them, that's substantiating your own case. And so far you haven't done that.

March 8, 2004 Tr. at 22. Before concluding the hearing, the court emphasized the meaning of its ruling:

> But I want to make it clear, Mr. Thomas, that you simply have to do a better job of complying with the procedural requirements. When I order you to do something by a particular date, when it's filing something, the only safe way that you can prove you complied with the order is to have a file stamped copy of the document that was supposed to be filed. And that way if the court's electronic docket is wrong, I know it's a problem in the clerk's office and not your problem, but when you simply say that you mailed something and it never arrived, that's not sufficient. I think this case is important to you. You have spent a lot of time on it, and you simply have to comply with the orders or you will never get to a trial.

March 8, 2004 Tr. at 26. After Thomas asked for forty-five days to respond to the outstanding discovery, the court gave him fifty-three days to comply with the court's order compelling discovery, setting a deadline of April 30, 2004. At a status hearing on April 14, 2004, Thomas did not ask

for any further time to comply with the order. Thomas failed to serve any response to discovery by April 30, 2004.

On May 10, 2004, the Herbst defendants moved for sanctions, requesting that the trustee's claims against them be dismissed. They set the sanctions motion for a hearing in the bankruptcy court on May 13. On May 12, both the Herbst and the Cogana defendants received discovery responses from Thomas. The certificates of service, signed by Thomas as counsel for the trustee, stated that the responses were served "this 7th day of May, 2004 to the Service List attached hereto, by U.S. Mail, postage prepaid." The responses had in fact been sent by UPS overnight service. A UPS tracking form for the package delivered to the Herbst defendants showed that it had been tendered to UPS on May 11, that it was sent next day air, and was delivered May 12 at 9:37 a.m. In a subsequent pleading, Thomas indicated he tendered the responses to UPS on May 7, 2004. These amended responses suffered some of the same infirmities as the first round. In response to interrogatories from the Herbst defendants seeking facts in support of the allegations in the complaint, Thomas once again repeated that he could not state every fact in support of his claims, that he was not obligated to prepare the defendants' case for them, that he relied on Federal Rule of Civil Procedure 33(d), on a number of depositions and documents that had already been produced by the defendants and by his September 25, 2003 document production. In other words, he repeated the very response that the district court warned him was woefully inadequate the first time around. In response to an interrogatory from the Cogana defendants asking the trustee to state the facts and identify the documents in support of an allegation that the defendants acted willfully and wantonly, Thomas replied, "The evidence will show that the documents discovered in this case and the actions of these defendants were knowing and willing and wanton." These are but a few examples of the many non-responsive answers given by Thomas.

After allowing time for the defendants to address the responses that they received the day before the sanctions hearing, the court set a new hearing date of August 5, 2004. After argument, the bankruptcy court announced it's decision. The court recounted the history of the discovery dispute and recalled the warning that if Thomas did not comply with discovery orders, he would never get the case to trial. The court noted that Thomas had two options on April 30 when discovery was due: (1) he could have filed a notice of compliance or filed the discovery itself on April 30; or (2) he could have moved for an extension of the deadline. Thomas did neither, the court noted. In addition to failing to comply with the order, the court noted that Thomas then lied about his service of the responses that were received on May 12 by the two groups of defendants:

> What appears from the record is that you sent off your responses to discovery via UPS on May 11th and lied about when you did it. Now lie is a strong word and I use it here advisedly. At the very least, you had asserted contradictory positions.

> In the certificate of service, which is Exhibit E to the Cogana and Pollak motion for sanctions filed May 27, 2004, you certified that you served your responses on May 7, 2004, quote, "by U.S. mail postage prepaid" and what appears to be your signature is on that certificate of service. So at one time, you said U.S. mail. In paragraph 21 of your combined response to the defendants' motion for sanctions, you assert that you delivered your responses to, quote, "a UPS store," unquote, on May 7, 2004. So those two statements to the court are contradictory and significantly in conflict. Moreover, the UPS tracking report attached to the Herbst defendants amended motion for sanctions filed June 16, 2004 appears to show that you delivered the packages to UPS on May 11th as opposed to May 7th.

> And Mr. Thomas, I find your conduct deplorable and, in light of my admonitions to you on March 8th about the importance of complying, your conduct fully justifies the sanction of dismissal. But even beyond that, the substance of your responses was totally inadequate. Based on your responses, I must conclude that you have no facts to support the allegations in your complaint, or that you simply don't understand the purpose and function of pretrial discovery.

> In either event, your conduct of this lawsuit has amounted to continuing harassment of these defendants which has gone on too long. I am granting both motions for sanctions, and the second amended complaint is dismissed with prejudice.

August 5, 2004 Tr. at 4-5.

The trustee, still represented by Thomas, appealed this ruling to the district court. The district court found that the bankruptcy court did not abuse its discretion in granting the motions to compel and did not abuse its discretion in sanctioning the plaintiff by dismissing the case. Specifically, on the motions to compel, the court found that the discovery requests were not unduly burdensome, that the information they sought was not protected by the work product doctrine, and that the plaintiff did not adequately respond to the requests. On the bankruptcy court's order granting sanctions, the district court agreed that, in supplying responses that were identical to the non-responsive answers the bankruptcy court had already rejected, counsel for the trustee engaged in a "blatant violation" of the court's order. The district court noted that the trustee did not challenge the finding that Thomas lied to the court, and that counsel for the trustee served the discovery responses only after receiving the motions for sanctions. The court found that dismissal was not an inappropriate sanction given that Thomas had been warned about the consequences of failure

to comply with court orders, and given the contumacious nature of Thomas' conduct. The district court therefore affirmed the bankruptcy court's ruling. The trustee appealed and we subsequently granted the motion to substitute Consolidated as the appellant.

## II.

On appeal, Consolidated, now represented by new counsel, argues that the courts below abused their discretion in dismissing the case. Consolidated raises three arguments on appeal. First, Consolidated contends that the courts below misapplied precedent governing the application of Rule 37 in dismissing the case. Second, Consolidated maintains that the court clearly erred in its factual findings that Thomas acted in bad faith and for the purpose of delaying prosecution of the case. Third, Consolidated argues that dismissal was improper because the plaintiff was not warned that dismissal was a possible result for its failure to comply with the discovery order.

## A.

Rule 37 (a) allows courts to enter orders compelling parties to comply with discovery requests.[4] Rule 37(b) provides, in relevant part:

> If a party . . . fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> * * *

---

[4] Federal Rule of Civil Procedure 37 is made applicable to adversary proceedings in bankruptcy through the application of Rule 7037 of the Bankruptcy Rules.

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party[.]

Fed. R. Civ. P. 37(b). The entry of sanctions under Rule 37 is reviewed for abuse of discretion. *Maynard v. Nygren*, 332 F.3d 462, 467 (7th Cir. 2003), *cert. denied*, 543 U.S. 1049 (2005); *Golant v. Levy (In re Golant)*, 239 F.3d 931, 937 (7th Cir. 2001). We review any factual findings for clear error. *Maynard*, 332 F.3d at 467. When ordering the sanctions of default judgment or dismissal of the case under Rule 37(b), the court must find that the party against whom these sanctions are imposed displayed willfulness, bad faith or fault. *Maynard*, 332 F.3d at 467-68; *Golant*, 239 F.3d at 936. We strongly encourage courts to make this finding explicitly, but we may infer it, if necessary, from the sanction order itself. *Golant*, 239 F.3d at 936.

Consolidated argues that, when viewed as a whole, the cases analyzing Rule 37 make clear that dismissal is warranted only when a party's conduct demonstrates an intent not to pursue the case but to avoid prosecution through dilatory tactics. According to Consolidated, the sanction of dismissal should not be granted for anything less than a total failure to respond to discovery requests. The cases upon which Consolidated relies are either inapplicable or favor the defendants' position here. For example, Consolidated relies on *Halverson v. Campbell Soup Co.*, 374 F.2d 810 (7th Cir. 1967) and *Fox v. Commissioner*, 718 F.2d 251 (7th Cir. 1983) for the proposition that the sanction of dismissal should be limited to "serious or total failure" to respond to discovery. *Halverson* held that the discretionary sanctions of Rule 37 are inapplicable where the complaining party has made no use of the discovery procedures provided in Rule 37. *Halverson*, 374 F.2d at 812. The *Halverson* court found Rule 37 inapplicable

to that case because the plaintiff had never sought in discovery the information that the defendants allegedly withheld. After finding the rule inapplicable, the court indicated in *dicta* that Rule 37(d) applied to nothing less than a serious or total failure to respond to interrogatories. Rule 37(d) addresses the failure of a party to attend its own deposition or to serve answers to interrogatories. The sanction in the instant case was not issued under Rule 37(**d**) but rather under Rule 37(**b**), for failure to comply with an order of the court. The order at issue here was an order compelling discovery under Rule 37(a). Rule 37(a)(3), in turn, provides that evasive or incomplete disclosures, answers or responses are to be treated as failures to disclose, answer or respond. The court found that the substance of Consolidated's response was "totally inadequate," and thus it could be treated as a failure to respond. Even under the *dicta* in *Halverson*, Consolidated would lose.

*Fox* addresses the standards to be applied to a dismissal in Tax Court under Tax Court Rule 104 ("T.C.R. 104"), the counterpart of Rule 37 in that court. The *Fox* court found that T.C.R. 104 was intended to address the same policy considerations as Rule 37. The court thus determined that it would apply the same limitations to the discretion of a Tax Court imposing sanctions under T.C.R. 104 as are applied to district courts imposing sanctions under Rule 37. The court then held that a Tax Court may not dismiss a case as a discovery sanction under T.C.R. 104 unless the Tax Court found that the failure to comply with discovery was undertaken willfully and in bad faith, and the party against whom the sanctions were to be imposed "totally failed to respond." *Fox*, 718 F.2d at 255. Like Rule 37(a), though, T.C.R. 104 provides that evasive or incomplete answers or responses are to be treated as failures to answer or respond. Again we note that the bankruptcy court found that Consolidated's responses were

"totally inadequate." For example, when asked to identify the facts and documents in support of an allegation of willful and wanton conduct, Consolidated replied, "The evidence will show that the documents discovered in this case and the actions of these defendants were knowing and willing and wanton." Tautology is no substitute for facts and documents. These kinds of answers could rightly be treated as total failures to answer, and thus the dismissal could be upheld even if it had been rendered under T.C.R. 104, which it was not.

*Sherrod v. Lingle*, 223 F.3d 605 (7th Cir. 2000) gains nothing for Consolidated as it applies Rule 37(c)(1), which addresses a failure to disclose expert witness evidence. Rule 37(c)(1) allows the court to exclude the witness if the failure to disclose is without substantial justification and is not harmless. We need not address Consolidated's argument further; it attempts to graft requirements onto a Rule 37(b) dismissal that we have never imposed. The sanction of dismissal under Rule 37(b) may be upheld if the trial court finds that the party against whom these sanctions are imposed displayed willfulness, bad faith or fault. The district court correctly used the standards set forth in *Golant* and *Maynard* and we therefore reject Consolidated's first argument.

**B.**

Consolidated argues that the court clearly erred in finding that Thomas acted in bad faith or for the purpose of delay in his responses to interrogatories and document requests. Addressing bad faith first, Consolidated contends that "harping on whether Thomas lied as to whether the discovery was tendered on May 7 or May 11, and whether it was sent via UPS or USPS was irrelevant for Rule 37 analysis." According to Consolidated, a finding that Thomas lied about when or how he sent the responses was an insufficient basis to find bad faith under Rule 37. The courts below simply

found that Thomas lied and that his conduct was deplorable. Consolidated maintains that although this might be an adequate basis for dismissal under the court's inherent power, the basis for the dismissal was Rule 37 which requires a showing that the violation of the court's order was in bad faith. As such, Consolidated declares, lying about when and how Thomas tendered the responses was irrelevant. Thomas openly admitted the responses, which were due on April 30, were late when he certified that they were mailed on May 7. Consolidated concludes that there was no motive to lie about the responses being seven rather than eleven days late, and the lie was not sufficient to demonstrate a bad faith violation of the court's discovery order. Indeed, Consolidated goes so far as to argue that the lie was proof that Thomas wanted to prosecute the case and felt a need "to cover his tracks of past conduct and general incompetence."

We reject this rather bold argument outright. When Thomas lied about when and how he tendered the discovery responses, that falsehood went to the heart of the court's order. Although he conceded that the responses were late in coming, he did not concede what was obvious to this court and to the courts below, that Thomas failed to tender **any** responses until after the motion for sanctions was filed on May 10. His lie was calculated to make the court believe that he substantially complied with the court's order without the threat of the sanctions motion. Perhaps he hoped to persuade the court to enter a less severe sanction; perhaps he hoped to avoid sanctions entirely. But the lie was so obviously related to the failure to comply with the order that the connection did not merit express mention below. Because this is the focus of Consolidated's argument, we make express what the courts below implied: the lie about when and where the responses were tendered was evidence of a bad faith breach of the court's discovery order. Moreover, the courts below did not rely solely on Thomas' lies for a showing of bad faith but relied in part on the fact

that he repeated the same non-responsive, inadequate answers that the bankruptcy court expressly warned him were unacceptable. This blatant disregard of the bank-ruptcy court's order was more than sufficient to demon-strate the bad faith finding that justified dismissal.

**C.**

Consolidated also contends that the district court abused its discretion by failing to warn the plaintiff of the pos-sibility of dismissal as a sanction for failure to comply with the discovery order. We can handle this complaint in short order. The district court did warn Thomas that if he continued to fail to comply with orders, he would "never get to a trial." Although a layperson might not have understood what that threat meant, a lawyer such as Thomas surely did. In the context of a Rule 41 dismissal for failure to prosecute, we noted that a single warning was sufficient and that the warning need not be formalized in a rule to show cause. *Ball v. City of Chicago*, 2 F.3d 752, 755 (7th Cir. 1993). "A judge is not obliged to treat lawyers like children." *Ball*, 2 F.3d at 755. It is sufficient to warn a party that if it fails to comply with a deadline, "the case is going away," the court will "take severe action in this case," and that the court "will seriously consider a motion to dismiss." *Aura Lamp & Lighting Inc. v. Int'l Trading Corp.*, 325 F.3d 903, 908 (7th Cir. 2003). *See also Fischer v. Cingular Wireless, LLC*, 446 F.3d 663, 665-66 (7th Cir. 2006) (noting that a warning is not always necessary and that notice of possible dismissal revealed in the opposing party's motion may serve as adequate warning). Here Thomas was warned that if he failed to comply, he would "never get to a trial." After this warning, he not only failed to comply, he lied to the court about his failure to comply. No more warning was warranted let alone required before dismissal under these circumstances.

AFFIRMED.

No. 05-2729                                                    15

A true Copy:

     Teste:

                         _____
                         *Clerk of the United States Court of*
                         *Appeals for the Seventh Circuit*